```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   DONALD T. NETTER

4              Plaintiff

5         v.                              16 Civ. 8211 (NRB)
                                          Decision
6   NRT NEW YORK, LLC, d/b/a The
    Corcoran
7
               Defendants
8
    ------------------------------x
9                                         New York, N.Y.
                                          November 3, 2016
10                                        11:30 a.m.

11  Before:

12                HON. NAOMI REICE BUCHWALD

13                                        District Judge

14                      APPEARANCES

15  SMITH GAMBRELL & RUSSELL
         Attorney for Plaintiff
16  DONALD ROSENTHAL

17  MARGOLIN & PIERCE
         Attorney for Defendant
18  ERROL MARGOLIN
```

```
 1              (In open court; case called)
 2              LAW CLERK:  Is the plaintiff present and ready to
 3    proceed?
 4              MR. ROSENTHAL:  Yes.
 5              THE COURT:  State your name for the record.
 6              MR. ROSENTHAL:  Donald Rosenthal from the law firm of
 7    Smith Gambrell & Russell.
 8              LAW CLERK:  Is the defendant present and ready to
 9    proceed?
10              MR. MARGOLIN:  Yes.  My name is Errol Margolin.  I'm a
11    partner at Margolin & Pierce.
12              THE COURT:  Fine.  Why don't you sit down.
13              I have a few questions, and thereafter if there is
14    anything anyone wants to say, that's fine.  You should know, of
15    course, that I have read your papers and have given this matter
16    some thought.
17              The first question just concerns the Court's
18    jurisdiction.  It is my understanding of the law that the issue
19    of whether Mr. Netter is bound to arbitrate is a decision for
20    the Court, not a decision for the arbitrators.
21              Anyone disagree with that proposition?
22              MR. ROSENTHAL:  Not I, your Honor.
23              MR. MARGOLIN:  I do, your Honor.
24              THE COURT:  Well, you didn't brief that.
25              MR. MARGOLIN:  Well --
```

1            THE COURT:  So I would have assumed that since you
2  didn't brief it, that you were not questioning.
3            MR. MARGOLIN:  May I speak to that?
4            THE COURT:  Sure.
5            MR. MARGOLIN:  Your Honor, this arbitration has been
6  pending for at least nine months.  Mr. Netter has been a
7  respondent in the arbitration proceeding for nine months.  He
8  had every opportunity to bring up the fact that he was not
9  subject to arbitration agreement.  He never did.  He didn't
10 appear in the proceeding.
11           There was an entire history to this case.  Finally,
12 the arbitrators who had seen enough, this is the fifth court
13 now that Mr. Netter has been involved with, they permitted
14 Corcoran, who was a real estate broker seeking a commission, to
15 file a motion for summary judgment.  On the day before the
16 motion for summary judgment, Mr. Netter ran over here to you,
17 your Honor, and filed this complaint to stay the arbitration as
18 to him.  Now, Corcoran has advanced the theory which would bind
19 a non-signatory to an arbitration agreement to arbitrate.  He
20 could have easily raised that before the arbitrators and chose
21 not to.
22           THE COURT:  But if it is his position that he never
23 agreed to arbitrate, if he did that and asked the arbitrators
24 to rule, that would be contrary to the position that he
25 maintains, and I would argue, would be a waiver of his

position.

Based on what you've said, just to respond, the actions of Mr. Netter in the context of the arbitration seem consistent with the position that he is taking in court. In other words, by not appearing, he is essentially voicing his position that he is not subject to the arbitration, and since arbitration is a creature of contract, and arbitrators don't really quite have the same powers that judges do or courts do in terms of serving summons and complaints on people which require a response, whether or not they're appropriate, while I totally understand Corcoran's position of sort of frustration given that there was the whole state court proceeding which didn't directly involve Corcoran, but of course Corcoran's -- what's the right word -- well, just put it Corcoran's, you know, right to assert its claim to a commission doesn't necessarily arise until the sale has completed.

So I do recognize it is a good sum of money, and I am sure that Corcoran's position is, we did what we were supposed to do under this contract and we deserve to get paid. I assume that's the position that they are asserting before the arbitrators.

MR. MARGOLIN: That is correct.

THE COURT: Right. So, just to be clear, Mr. Margolin, I don't think you are disagreeing with the premise of my jurisdictional question, which is essentially

1  that typically it is the role of the Court to determine the
2  question in the first instance as to whether someone who is
3  objecting to an arbitration or who is objecting to being hauled
4  before the arbitrators, that that issue is one for a court to
5  decide?
6           MR. MARGOLIN:  I read the cases that were cited.  I
7  agree.
8           THE COURT:  All right.
9           Now, the other big picture preliminary question is, I
10 think I understand the strategic reason that this case was
11 commenced by an application for a preliminary injunction, but I
12 don't really see a distinction between the issue raised on the
13 current motion and the full case on the merits.  So my question
14 to both parties is, is there something I'm missing or is this
15 an appropriate case to consolidate the merits with the
16 preliminary injunction motion?
17          MR. ROSENTHAL:  Yes, your Honor.  We see no meaningful
18 distinction between the motion and the underlying proceeding
19 application for a stay.  It's one and the same.
20          THE COURT:  Mr. Margolin.
21          MR. MARGOLIN:  I'm not sure I understand the question.
22 Are you saying consolidate the arbitration with --
23          THE COURT:  No, not at all.
24          MR. MARGOLIN:  OK.
25          THE COURT:  Let me say it and quote a Federal Rule as

1  I do.  So Rule 65 on injunctions and restraining orders, Rule
2  65(a)(2) which bears the title Consolidating the Hearing with
3  the Trial on the Merits.
4           MR. MARGOLIN:  I understand.
5           THE COURT:  OK?
6           MR. MARGOLIN:  I got it.
7           THE COURT:  All right.  So the question is, this
8  provision requires that the Court give notice to the parties or
9  the concept of joinder and consolidation and my -- and to go
10 back and ask my question again, I don't see a distinction
11 between the issues in these motion papers and some ultimate
12 issue on the merits.  They seem to me to be one and the same,
13 and my question to you is, do you disagree.  And if you do,
14 what is it that I am missing?  In other words, why can't we
15 resolve this now?
16          MR. MARGOLIN:  Well, I think the issue for me is that
17 we have asserted facts upon information and belief, I will
18 concede, that The Ann has transferred -- it was a single asset
19 company.  It transferred its sole property, and it transferred
20 all of the assets to Mr. Netter, and that this perpetuates a
21 fraud on Corcoran.  We would have to have a hearing, or I would
22 suggest to the Court that the merits of that position have not
23 been presented to you.  Nowhere in the moving papers do I see a
24 statement, a bank account or anything that The Ann Holdings has
25 sufficient assets to satisfy an award which is rendered in the

1  arbitration proceeding.  And I understand, you know, we want to
2  preserve the status quo and what the standards are for
3  injunctive relief, but I think all motions must be considered
4  on the merits, and I don't see any merits that The Ann Holdings
5  has sufficient assets.
6        The Ann Holdings is a South Dakota corporation.  It
7  had one asset.  It is, as I have said in my papers, one and the
8  same with Mr. Netter, and for him to hide behind this LLC and
9  we get an award and then go to South Dakota and find out later
10 that there are no assets -- it's not like J.C. Penney Company,
11 which is an ongoing business, and we're trying to make the
12 president of the J.C. Penney Company liable for the debts of
13 J.C. Penney Company.
14       Here, we have a single asset company sold its assets.
15 I see an affidavit from a lawyer saying, oh yes, we gave all
16 the money to The Ann Holdings, but that was two years ago.
17 What happened to the money since then?  I have asked
18 repeatedly -- I said, I'll let him out if you demonstrate to me
19 that The Ann has sufficient assets to satisfy an award.  That
20 request has never been met.
21       THE COURT:  Well, don't you have two problems?
22       MR. MARGOLIN:  Yes.
23       THE COURT:  One might be just called putting the cart
24 before the horse.  And by that I mean are you not
25 prematurely -- you do not actually have a judgment against Ann

1    Holdings.

2        MR. MARGOLIN:  I do not.

3        THE COURT:  Right.  And, listen, I am not
4    unsympathetic to a concern about collectibility in any
5    situation, but unless you commenced and succeeded on bringing
6    an action under the CPLR for prejudgment attachment, which you
7    have not done, I don't think you get to have security for your
8    judgment before you obtain a judgment; and I don't disagree
9    with you that if you did have a judgment, and after your
10   arbitration, you translated -- confirmed the award and obtained
11   a court judgment, that you could register that judgment under
12   the Full Faith and Credit Clause in South Dakota and proceed to
13   try to collect it, and you could certainly as part of your
14   supplementary proceedings depose Mr. Netter, the proper, you
15   know, spokesperson and you could find out what happened.  And
16   if in fact it turns out -- because this is all an assumption
17   that he will not -- that if Corcoran gets a judgment, it will
18   not be paid.  And if the scenario turns out as you think it
19   will, then you have, I would think, a good claim for piercing
20   the corporate veil as part of your judgment collection.

21       MR. MARGOLIN:  But I've alleged that in the
22   arbitration.  I've alleged facts sufficient to state a cause of
23   action for piercing the corporate veil in the arbitration.
24   Mr. Netter has not responded.  I said, upon information and
25   belief that The Ann transferred the money to Mr. Netter.  I

1  don't know whether that's true or not.

2  THE COURT: Then you have a forum if the arbitrators

3  believe, you know, contrary to my analysis, that it's too early

4  to raise that issue, but they could disagree, and they aren't

5  necessarily bound to the same sort of constraints that I am,

6  and then they decide that you're right and that Ann Holdings

7  doesn't give the arbitrators the response that they are looking

8  for --

9  MR. MARGOLIN: See, the last communication I got from

10  the arbitrators was that they were waiting on you to determine

11  whether --

12  THE COURT: OK. Well, I'm happy to resolve this

13  today.

14  MR. MARGOLIN: I see.

15  THE COURT: I mean, look, let's assume for argument's

16  sake that Mr. Netter took the proceeds of the sale out of Ann

17  Holdings, is there is nothing that prevents him from putting

18  money back in Ann Holdings because presumably for tax reasons

19  he would want Ann Holdings to pay the commission because that

20  is the way it would then reduce the profit on the sale. I'm

21  assuming a profit. New York real estate being what it is, I'm

22  assuming he made money.

23  If he did, you know, you want to reduce the capital

24  gain. I would think that's how he would do it. But listen,

25  this is far higher finance than people who make their money off

1     of a salary get involved in. The point is there really is no
2     evidence that there really has been a fraud committed. I think
3     just intellectually it's too early to figure that out.
4            I think those are my questions. I'm happy to hear
5     anything else. Mr. Rosenthal is being smart and keeping quiet.
6     I'm doing a good job for him. He's learned that basic
7     litigation lesson: Don't talk when you're ahead.
8            MR. MARGOLIN: The only thing I would suggest to the
9     Court, having read Rule 65, is that at the very minimum,
10    Mr. Netter should have to post a bond to secure whatever
11    judgment we get against Ann Holdings in order to be entitled
12    to --
13           THE COURT: That's like winning.
14           MR. MARGOLIN: No.
15           THE COURT: I mean, the point is you don't have the
16    basis to get prejudgment attachment. You haven't sought it,
17    and while I didn't go back yesterday and I probably should
18    have, looked at the New York CPLR section on that, I've dealt
19    with it in a few other cases, and I don't think you could get a
20    prejudgment attachment. If you can't, then you can't back door
21    this preliminary injunction which simply is designed to
22    establish that Mr. Netter did not voluntarily or contractually,
23    I should say, agree to arbitrate. But that is not the same
24    thing as opening him up to a bond. Whether or not he
25    arbitrates is really not -- I mean, it doesn't really involve

the collectibility issue because even if you have a judgment, you still have to collect it. And you just have one more step here essentially.

Anybody else want to say anything?

MR. ROSENTHAL: I have been very quiet, your Honor, for the reasons that you wisely suggested, so I am going to continue in that vein. If there is anything in particular that's troubling the Court that you would like me to address, I'm happy to do it, but I think you have hit on the same concerns that we have had, so I will leave it there.

THE COURT: As I said, and it's going to be very obvious because I'm going to read a decision into the record, and we really did research this and think about it a good deal.

First, based on the record submitted on the motion, and given our discussion at oral argument, I am going to consolidate the preliminary injunction hearing with the merits pursuant to Federal Rule of Civil Procedure 65(a)(2) and grant plaintiff's request for a permanent injunction.

A permanent injunction is warranted where the moving party establishes: "(1) Success on the merits; (2) The lack of an adequate remedy at law; and (3) Irreparable harm if relief is not granted.

I cite for that proposition *UBS Securities v. Voegeli*, 405 F. App'x 550, 551 (2d Cir. 2011). It's a summary order citing *Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006). Under

1  the Circuit's precedent being forced to arbitrate a claim one

2  did not agree to arbitrate constitutes an irreparable harm for

3  which there is no adequate remedy.

4  *Voegeli*, 405 F. App'x at 552 citing *Merrill Lynch*

5  *Investors Managers v. Optibase Ltd.*, 337 F.3d 125 at 129 (2d

6  Cir. 2003), a per curiam opinion.  Therefore, the only issue in

7  this case is whether plaintiff succeeds on the merits of his

8  claim; i.e., whether Netter is a proper party to the

9  arbitration pending between NRT New York, LLC, doing business

10 as The Corcoran Group (hereafter Corcoran) and The Ann Holdings

11 LLC, formerly known as Cricket LLC (hereafter The LLC).

12 It is well settled that "Unless the parties clearly

13 and provide otherwise, the question of whether the parties

14 agree to arbitrate is to be decided by the Court, not the

15 arbitrator."  *John Hancock Life Ins. Co., v. Wilson*, 254 F.3d

16 48, 53 (2d Cir. 2001).  The question of whether a party is

17 bound to an agreement to arbitrate in turn is governed by

18 ordinary principles of state contract law.  *First Options of*

19 *Chicago, Inc., v. Kaplan*, 514 U.S. 938, 944 (1955).  In this

20 case the parties do not dispute that New York law governs.

21 The June 3, 2010 agreement entered into between The

22 LLC and Corcoran (hereafter referred to as The Agreement)

23 requires arbitration of all disputes arising under its terms

24 and is the subject of the arbitration currently pending between

25 Corcoran and The LLC.  There is no dispute that Netter signed

1     the agreement solely in his capacity as representative The LLC
2     which is insufficient to personally bind Netter to the
3     agreement.  See e.g. *Bonnant v. Merrill Lynch, Pierce, Fenner &*
4     *Smith, Inc.* 467 Fed App'x 4, 10 (2d Cir. 2012).  Corcoran
5     argues that Netter may nevertheless be bound under a
6     veil-piercing theory.
7              Defendants are correct that in some circumstances
8     non-signatories may be bound to an arbitration agreement under
9     a veil-piercing theory.  See *Thomson-CSF, SA. v. American*
10    *Arbitration Association*, 64 F.3d 773, 776 (2d Cir. 1995).
11    However, under New York Law, the proponent of the veil-piercing
12    theory must establish that:  (1) the owner exercised complete
13    domination of the corporation in respect to the transaction
14    attacked, and (2) that such domination was used to commit a
15    wrong or fraud against the plaintiff which resulted in
16    plaintiff's injury.  *Morris v. New York State Department of*
17    *Taxation and Finance*, 82 N.Y.2d 135, 141, a parallel cite at
18    623 N.E. 2d 1157 (1993).
19             Defendant's reliance on a veil-piercing theory at this
20    time is misplaced and premature.  While there is evidence that
21    Netter has exercised complete domination of The LLC with
22    respect to the transaction at issue, defendants cannot
23    establish that any such domination was used to commit a wrong
24    or fraud against Corcoran which resulted in Corcoran's injury.
25             There is no evidence that The LLC has not retained the

proceeds of the sale of the condominium at issue, or whether The LLC has insufficient assets to satisfy an arbitral or judgment against it. More fundamentally, Corcoran has not suffered any injury resulting from Netter's alleged domination of The LLC.

Indeed, Corcoran will not suffer an injury unless and until The LLC fails to satisfy an arbitral award. In the absence of such an injury Corcoran's attempt to invoke a veil-piercing theory is premature. The fact that Corcoran must first in its word "chase The LLC," which is incorporated in South Dakota, does not constitute a fraud or wrong and does not warrant disregarding The LLC's corporate forum. Accordingly, it is ordered that plaintiff is granted a permanent injunction staying the arbitration proceedings against Netter.

We will issue something on the docket sheet to reflect this.

    MR. ROSENTHAL: Thank you very much, your Honor.
    THE COURT: Very good. Thank you.
    MR. MARGOLIN: Thank you, your Honor.
    (Adjourned)